1

2

3

4

5

6                                    **UNITED STATES DISTRICT COURT**
                                          **DISTRICT OF NEVADA**
7

8    THOMAS W. HASH,                            )          3:05-CV-0353-LRH (RAM)
                                                )
9                       Plaintiff,              )
                                                )
10                                              )          **ORDER**
                vs.                             )
11                                              )
     FEDEX HOME DELIVERY, et al.,               )
12                                              )
                        Defendants.             )
13   _____)

14          Before the court is Plaintiff's Motion to Remand filed on August 5, 2005.  (Doc. #9.)

15   Defendant FedEx Ground Package System, Inc. (hereinafter "FedEx") filed an opposition on August

16   23, 2005.  (Doc. #11.)  Plaintiff did not reply.  Also before the court is Defendant FedEx's Motion to

17   Compel Arbitration and Stay Action filed on September 7, 2005.  (Doc. #12.)  Plaintiff opposed the

18   motion on September 21, 2005 (Doc. #13), and Defendant FedEx Ground replied (Doc. #14).

19                                        **BACKGROUND**

20          Plaintiff Thomas Hash originally brought this action in state court on April 13, 2005 against

21   Defendants FedEx[1] and Chris Pickett, and several doe defendants.  (Doc. #2, Exh. A.)  Defendant

22   FedEx was served on May 17, 2005 and then removed the case to federal court on July 14, 2005 under

23   28 U.S.C. §§ 1332, 1441.  (Doc. #5.)  At the time of the removal, Defendant FedEx alleged it was

24   unknown whether Defendant Pickett had been served.  (*Id.*)  No defendant has filed an answer.

25   ///

26

27   _____

28          [1]Plaintiff named FedEx Home Delivery, a division of FedEx Ground, as a defendant.  (Doc. #2, Exh. A.)
     Defendant FedEx Ground has taken charge of this suit, however.  (*See* Doc. #5.)

1

## STATEMENT OF FACTS

2      Plaintiff became an independent contractor for Defendant FedEx through a Standard

3   Contractor Operating Agreement (hereinafter "Contractor Agreement"). (Doc. #12, Exh. A.) Plaintiff

4   and Defendant FedEx executed the agreement on July 27, 2002. (*Id.*) The agreement had an initial

5   term of two years, with automatic and successive renewals in one year terms. (Doc. #13.)

6      In January 2004, Plaintiff allegedly informed several FedEx employees, including Mr. Eric

7   Brooks, Mr. Tom Herd, Mr. Ron, and Mr. Chris Pickett that he planned to sell his two delivery routes.

8   (Doc. #13.) Plaintiff entered into an agreement to that effect on February 13, 2004. (*Id.*) Plaintiff

9   told Defendant Pickett of the sale the following day and was subsequently terminated. (*Id.*)

10      Plaintiff claims Defendant FedEx breached the Contractor Agreement and the implied covenant

11   of good faith by terminating their Agreement. (Doc. #2, Exh. A.) Plaintiff also claims that Defendant

12   FedEx's termination constituted a tortious interference with his business relations, and that Defendant

13   Pickett conspired with Defendant FedEx to do so. (*Id.*) Last, Plaintiff alleges the Contractor

14   Agreement was an unconscionable contract of adhesion, and requests that the court not enforce its

15   arbitration clause. (*Id.*; Doc. #13.)

16   A.  Removal

17      Plaintiff is a citizen of Nevada who worked as a daily delivery independent contractor for

18   Defendant FedEx. (Doc. #2, Exh. A; Doc. #5; Doc. #9.) It is undisputed that Defendant FedEx was

19   incorporated in Delaware. (Doc. #2, Exh. A; Docs. #5, 9, 11.) The parties disagree, however, as to

20   Defendant FedEx's principal place of business.[2]

21   _____

22      [2]Defendant Chris Pickett was a terminal manager for Defendant FedEx. (Doc. #12.) There are no

23   allegations in the Complaint pertaining to Defendant Pickett's citizenship. Plaintiff only alleged that he was a
    manager employed at Defendant FedEx's Washoe County, Nevada office. (Doc. #2, Exh. A.) Defendant FedEx,

24   on the other hand, alleges that Defendant Pickett is a citizen of Connecticut for the purposes of removal and
    diversity jurisdiction. (Doc. #5.) In any event, Plaintiff's Motion to Remand does not contend that Defendant

25   Pickett is a citizen of Nevada. Plaintiff's Motion is based solely off the citizenship of Defendant FedEx. (*See* Doc.

26   #9.) Defendants allege in their Statement Concerning Removal that "Defendant Chris Pickett is not known to

27   be served at this time . . . ." (Doc. #5.)

28                                    2

1  Defendant FedEx claims its principal place of business is at its headquarters in Pennsylvania.

2  (Docs. #5; 11.)  Plaintiff never asserts that Nevada is Defendant FedEx's principal place of business.

3  (*See* Doc. #9.)  Plaintiff only argues that Defendant FedEx is also a citizen of Nevada because it is

4  "authorized to conduct business within the State of Nevada" by virtue of foreign corporate charter filed

5  with the Nevada Secretary of State.  (*See id.*)

6  B.  Arbitration

7  Defendant FedEx moves the court to stay this action and compel arbitration for all of Plaintiff's

8  claims.  (Doc. #12.)  The arbitration clause of the Contractor Agreement states that:

9  In the event[FedEx] acts to terminate this Agreement (which acts shall
    include any claim by Contractor of constructive termination) and
10   Contractor disagrees with such termination or asserts that the actions
    of [FedEx] are not authorized under the terms of this Agreement, then
11   each such disagreement (but no others) shall be settled by arbitration
    in accordance with the Commercial Arbitration Rules of the American
12   Arbitration Association (AAA) in accordance with the terms and
    conditions set forth in Addendum 7 to this Agreement.

13  (Doc. #12, Exh. A (section 9.3).)  Addendum 7 to the Contractor Agreement sets forth the framework

14  for any potential arbitrations.  (Doc. #12, Exh. A (add. 7).)

15  **LEGAL STANDARD**

16  A.  Removal & Diversity Jurisdiction

17  Generally, removal is proper if the case could have been originally filed in federal court.  28

18  U.S.C. § 1441(a) (2006).  Removal must occur, however, within thirty days after the defendant has

19  been served with the first removable pleading, such as the complaint, and all defendants must join in

20  the removal.  28 U.S.C. § 1446(b).  The defendants bear the burden of proving the removal is proper.

21  *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citing *Ethridge v. Harbor*

22  *House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988)).

23  In the cases where removal is based on diversity, *see* 28 U.S.C. § 1441, all the rules of 28 U.S.C.

24  § 1332 apply.  Thus, there must be complete diversity amongst the parties and there must be more than

25  $75,000 in controversy.  *Id.* § 1332(a).  If at any time before final judgment it comes to the attention

26  of any party or the court that federal subject matter jurisdiction does not in fact exist, the court may

27  remand the case to state court.  28 U.S.C. § 1447(c).

28

3

B. Arbitration

The Federal Arbitration Act (hereinafter "FAA") governs contractual arbitration in written contracts involving interstate or foreign commerce. 9 U.S.C. § 2 (2006). Federal standards on arbitrability require that courts address such agreements with a "healthy regard" for the policy favoring arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.*

Before a court can enforce such a clause, however, it must first inquire as to whether there is a valid agreement to arbitrate. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695-96 (8th Cir. 1994). If the agreement is valid, the court must then ask whether the specific dispute is subject to arbitration. *Chiron Corp.*, 207 F.3d at 1131; *Houlihan*, 31 F.3d at 695-96. General state law principles may apply in determining the validity, enforceability, and interpretation of an arbitration clause. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996); *Volt Info. Sci., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989). If the court finds there is a valid arbitration agreement that covers the case at hand, it must direct the parties to proceed to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## DISCUSSION

A. Removal & Diversity Jurisdiction

The court notes that Defendant FedEx's removal papers were filed almost two months after they were served with the summons and complaint. (Doc. #5.) *See* 28 U.S.C. §§ 1446(b) (2006). The court cannot remand the case *sua sponte* on those grounds. *Kelton Arms Condominium Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). Procedural protections, such as the thirty day filing requirement, are for the parties' protections. *Id.* Here, Plaintiff had thirty days to file a motion to remand based on Defendant FedEx's untimely removal, *id.* § 1447(c), but waived that objection by

1   failing to present a motion to that effect, *Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 528 (8th Cir.

2   1996).

3   Also, although proper removal in a multi-defendant case requires the consent of all defendants,

4   *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232-33 (9th Cir. 1986), Defendant Pickett's failure to consent

5   has no effect. Defendant FedEx asserted that Defendant Pickett has not yet been served (Doc. #5).

6   *Riggs v. Plaid Pantries, Inc.*, 233 F. Supp. 2d 1260, 1264 (D. Or. 2001). Defendant FedEx has also

7   alleged that Defendant Pickett is a citizen of Connecticut (Doc. #5). *See Clarence E. Morris, Inc. v.*

8   *Vitek*, 412 F.2d 1174, 1176 (9th Cir. 1969). In any event, Plaintiff does not attack the removal of this

9   case based on Defendant Pickett's citizenship.

10  <u>(1) Complete Diversity</u>

11  Plaintiff does not argue that Nevada is Defendant FedEx's "principal place of business," but that

12  it is one of its places of business. (*See* Doc. #9.) That is, the Motion to Remand claims Defendant

13  FedEx is a citizen of Nevada under 28 U.S.C. § 1332 by virtue of its status as a foreign corporation that

14  operates in Nevada. (Doc. #9.) Plaintiffs misunderstand the law. It is well known that while many

15  businesses are incorporated in one state, they may operate in others. That is why corporations, unlike

16  natural persons, may have dual citizenship for the purposes of diversity jurisdiction. 28 U.S.C. §

17  1332(c)(1) (2006). Their citizenship, however, is limited to their State of incorporation and whichever

18  State they have their *principal* place of business. *Id.* They are not citizens of every State in which they

19  do business as Plaintiff contends (*see* Doc. #9). *Wachovia Bank v. Schmidt*, 126 S. Ct. 941, 951 (2006)

20  (citing *Penn. R. Co. v. St. Louis, A. & T.H.R. Co.*, 118 U.S. 290, 295-96 (1886)).

21  Corporate citizenship in terms of its "principal place of business" is determined "by the following

22  two-part inquiry: (1) in what state does a 'substantial predominance' of the corporate activity take

23  place? or (2) if the corporation's activities are not predominant in a single state, then the principal place

24  of business is where the majority of its executives and administrative functions are performed." *United*

25  *Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002) (citing *Tosco Corp. v.*

26  *Communities For a Better Env't*, 236 F.3d 495, 500 (9th Cir. 2001)). In this case, it is well known that

27  FedEx operates in all over the United States, Canada and Puerto Rico. (Doc. #11, Exhs. 1-5.)

28                                                    5

1    Altogether, FedEx owns or leases 515 facilities and twenty-eight hubs. (Doc. #11, Exh. 3.)  They

2    handle approximately 2,577,140 million packages a week (Doc. #11, Exh. 5) with the help of 32,523

3    employees (Doc. #11, Exh. 2) and 16,264 independent contractors (Doc. #11, Exh. 1) all over the

4    United States.  Given these facts, the court cannot find there is only one state in which Defendant

5    FedEx has a substantial predominance.  *See, e.g.*, *United Computer Sys.*, 298 F.3d at 763 (stating that

6    corporate affidavits containing statistical data was sufficient evidence for establishing diversity).

7         Even if there was a single state that Defendant FedEx had substantial predominance, it would

8    not be Nevada.  The majority of Defendant's business is not done in Nevada.  *Industrial Tectonics, Inc.*

9    *v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990).  The bulk of its facilities, employees, and packages

10   handled are not in Nevada.  (Doc. #11, Exhs. 2, 3, 5.)  In fact, if one were to compare the State of

11   Nevada with other States, Nevada would come in forty-fifth place, out of fifty states, as far as terminal

12   facilities are concerned.  (Doc. #11, Exh. 3.)  Nevada would place thirty-second in employee numbers

13   (Doc. #11, Exh. 2), and thirty-fifth in independent contractors.  (Doc. #11, Exh. 1.)  By way of

14   comparison, Defendant FedEx has about five and a half times more independent contractors in

15   Pennsylvania than Nevada, and more than twenty times the employees.  (Doc. #11).  Pennsylvania

16   also generates five times more revenue for FedEx than Nevada.  (*See* Doc. #11, Exh. 5.)  Since there

17   is no one State where the Defendant has a substantial predominance, the court must examine location

18   of its "nerve center." *Industrial Tectonics, Inc.*, 912 F.2d at 1094.  Plaintiff has not alleged or shown that

19   Defendant FedEx's has the "majority of its executives and administrative functions" in Nevada.

20   Plaintiff's argument that "since the State of Nevada is, and has been, the fastest growing state in the

21   nation for some time means that Nevada could very well be Defendant's principal place of business"

22   (Doc. #9), is without merit.  The proposition also misses the point.  Defendant FedEx's opposition and

23   accompanying affidavits, however, establish that its headquarters are in Pennsylvania.  They show that

24   Defendant FedEx maintains its formal headquarters in Pennsylvania (Doc. #11, Exh. 3), and that

25   Pennsylvania is where most of Defendant FedEx's executive functions are carried out (Doc. #11, Exhs.

26   1- 5).

27

28                                                    6

1    Plaintiff's last argument against diversity concerns Defendant's alleged "reincorporation" in

2  Nevada.[3]  (Doc. #9.)  The court, however, does not find that Defendant FedEx was "incorporated"

3  in Nevada for the purposes of diversity jurisdiction.  *See* 28 U.S.C. § 1332(c)(1) (stating that "a

4  corporation shall be deemed to be a citizen of *any* State by which it has been incorporated").  Nevada

5  Revised Statute (hereinafter "NRS") § 80.010 is a mandatory requirement for any foreign corporations

6  conducting business within the State. Nev. Rev. Stat. § 80.010(a)(1) (West 2006) (requiring those

7  businesses to file a certificate of corporate existence, appointment of resident agent, and a descriptive

8  statement of the corporation's infrastructure with the Secretary of State).  Compliance with section

9  80.010 thereby "qualifies" a foreign corporation to do business in Nevada.  *Id.*  It does not

10  "reincorporate" the business in Nevada.  *E.g., Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 312

11  (E.D. Va. 1993) (finding a business incorporated in Delaware and involuntarily "reincorporated" in

12  Virginia as a public service company, as opposed to being merely "registered" to do business, to have

13  Virginia citizenship).

14    Moreover, absent any controlling authority from the Ninth Circuit, the court finds the reasoning

15  of previous courts, such as *Rudisill v. S. Ry. Co.*, 424 F. Supp. 1102, 1104 (W.D. N.C. 1976), *aff'd*, 548

16  F.2d 488 (4th Cir. 1977), is compelling.  That case involved a company incorporated in Virginia, *id.*

17  at 1105, whose principal place of business was also in Virginia, *Rudisill*, 548 F.2d at 490.  The company

18  was involuntarily domesticated in North Carolina.  *Rudisill*, 424 F. Supp. at 1105.  The court found

19  the company was not a citizen of North Carolina, however, based on the "nature" of its incorporation

20  in North Carolina.  *Id.* at 1104-05.  The court reasoned that to find otherwise would lead to

21  "undesirable results," such as procedural confusion amongst plaintiffs and the proliferation of straw men.

22  *Id.* at 1105.  This logic is persuasive considering the mass of modern registration statutes, *see* Matthew

23  Kipp, *Inferring Express Consent: The Paradox of Permitting Registration Statutes to Confer General*

24  *Jurisdiction*, 9 Rev. Litig. 1, n.1 (1990) (listing statutes such as NRS § 80.010 in every state that require

25

26    [3]Plaintiff's Motion purports to include a copy of Defendant's filings with the State of Nevada in Exhibit

27  1 to the Motion.  No exhibits were filed.

28                                                    7

foreign corporations to register before transacting business), and the court adopts it in the instant matter.  Businesses such as Defendant FedEx cannot be considered a citizen of each and every state it involuntarily files with.

All the evidence shows that Defendant FedEx is multi-national corporation incorporated in Delaware and with its headquarters in Pennsylvania.  (Docs. #5, 11.)  The fact that Defendant FedEx is qualified to conduct business in Nevada does not make it a citizen of the State for purposes of diversity jurisdiction.  Thus, based on the arguments presented and the court's independent review of the evidence, the court finds complete diversity exists between the parties per 28 U.S.C. § 1332.

(2) Amount in Controversy

Diversity subject matter jurisdiction requires that more than $75,000 be at issue.  28 U.S.C. § 1332(a) (2006).  The court views the complaint and other submitted proof to see whether it is "apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . ."  *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).  Here, Plaintiff's Complaint has four claims wherein he seeks damages "in excess of $10,000.00."  Under normal circumstances, this would be insufficient to meet the statutory minimum under section 1332(a).  However, Nevada Rule of Civil Procedure 8(a) requires that claimants seeking more than $10,000 in damages to demand "damages 'in excess of $10,000' without further specification of amount."

Specific factual allegations in the Complaint show that the crux of Plaintiff's case lies within a lost business deal that was worth approximately $80,000 for which he claims Defendant FedEx tortiously interfered with (Doc. #2, Exh. A, ¶¶ 12, 26-34).  *Ammex Warehouse Co. of San Ysidro v. Dept. of Alcoholic Beverage Control*, 224 F. Supp. 546, 550 (C.D. Cal. 1963) (stating that courts may look into the complaint for statements that qualify or detract from the damages claimed).   Without even considering Plaintiff's other claims for actual or punitive damages, the court finds the jurisdictional minimum has been met.  It cannot be said to a legal certainty that Plaintiff's case is worth less than the jurisdictional amount.  Moreover, this case was removed by Defendant, and in such cases there is a strong presumption that the plaintiff has not exaggerated his damages to confer federal diversity jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

8

1    Accordingly, because the parties are completely diverse and the amount in controversy exceeds

2    $75,000, the court has subject matter jurisdiction per section 1332. Plaintiff's Motion to Remand based

3    on the citizenship of Defendant FedEx should be denied.

4    B. Motion to Compel Arbitration

5    Neither party argues that the FAA is inapplicable. The Contractor Agreement was a written

6    agreement that included an arbitration clause, and the contract affected interstate commerce. *Allied-*

7    *Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 273-74 (1995) (broadly construing the FAA's commerce

8    requirement). Thus, in order for the court to compel arbitration, it must determine whether the parties

9    had a valid agreement to arbitrate, and whether this dispute falls within the scope of section 9.3 of the

10    Contractor Agreement.

11    (1) Scope of Section 9.3 of the Contractor Agreement

12    Plaintiff argues that even if the arbitration clause in this case is valid, Plaintiff's tort claims are

13    not within its scope. (Doc. #13.) According to Plaintiff the arbitration clause only requires claims

14    relating to the interpretation of the Contractor Agreement be submitted to arbitration. (*Id.*) Defendant

15    takes contradictory positions. In its Motion, Defendant asserts that all of Plaintiff's claims are subject

16    to the arbitration clause (Doc. #12), but in its Reply, Defendant states that "[t]he arbitration clause

17    simply does not address tort liability for intentional or reckless conduct . . . ." (Doc. #14.)

18    To begin with, the court notes that while both federal law and Pennsylvania law favor the

19    enforcement of arbitration provisions, that policy "does not require the rubber stamping of all disputes

20    as subject to arbitration." *McNulty v. H&R Block Inc.*, 843 A.2d 1267, 1271 (Pa. Super. Ct. 2004);

21    *accord Lytle v. CitiFinancial Serv., Inc.*, 810 A.2d 643, 657 (Pa. Super. Ct. 2002) (stating that

22    Pennsylvania law is consistent with federal law on the enforceability of arbitration agreements). Section

23    9.3 of the Contractor Agreement states that "[i]n the event [Defendant FedEx] acts to terminate this

24    Agreement . . . and Contractor disagrees with such termination or asserts that the actions of

25    [Defendant] are not authorized under the terms of the Agreement, then each such disagreement (but

26    no others) shall be settled by arbitration . . . ." (Doc. #12, Exh. A.) Broad language, such as "any

27    claim," "relating to" or "arising under" are not present. *See United Steelworkers of Am. v. Duluth Clinic,*

28    9

1   *Ltd.*, 413 F.3d 786, 789-90 (8th Cir. 2005) (concluding that an arbitration clause was narrow when

2   it had no language such as "any controversy or claim," "arising out of," or "relating to"); *Tracer Research*

3   *Corp. v. Nat'l Envtl Serv. Co.*, 42 F.3d 1292, 1294-95 (9th Cir. 1994) (noting the omission of broad

4   language such as "relating to"); *McNulty*, 843 A.2d at 1270 (holding the arbitration clause was very

5   broad where it included language such as "any claim" and "relating to"). Instead, section 9.3 contains

6   very specific language. It only covers a dispute in which a contractor disagrees with Defendant FedEx's

7   termination of the Contractor Agreement, and "no others." *Cummings v. Fedex Ground Package Sys.,*

8   *Inc.*, 404 F.3d 1258, 1261-62 (10th Cir. 2005) (holding the exact same arbitration clause with respect

9   to FedEx independent contractors was a "narrow" one).

10          Section 9.3 of the Contractor Agreement is further qualified by the accompanying Addendum.

11   Section 5 of Addendum 7 clearly states that "[t]he arbitrator shall have the authority *only* to conclude

12   whether the termination of the Contractor was within the terms of this Agreement, to determine

13   damages if required . . . , and to provide for the division of the AAA fees and AAA assessed expenses

14   . . . ." (Doc. #12, Exh. A (emphasis added).) Reading this section of the Addendum with section 9.3

15   of the Contractor Agreement makes clear the parties' intentions to restrict, not broaden, the scope of

16   arbitrable issues. Only three issues may be decided through arbitration, and "[i]mplicit is the

17   recognition that not all controversies arising under the agreement were to be settled through the

18   arbitration process." *Independence Dev., Inc. v. Am. Arbitration Ass'n*, 333 A.2d 781, 783 (Pa. 1975).

19          This case is somewhat similar to *Henning v. State Farm Mut. Auto. Ins. Co.*, 795 A.2d 994 (Pa.

20   Super. Ct. 2002). In that case, the insured plaintiff got into a car accident caused by an uninsured

21   motorist, and sought relief under the uninsured's father's policy. *Id.* at 995. The father's insurance

22   company, State Farm, claimed that the uninsured son was specifically excluded from the father's policy,

23   and requested the matter be sent to arbitration. *Id.* State Farm had a specific arbitration clause,

24   however, which limited the arbitrator's decision to only two issues, whether damages could be collected

25   and if so, in what amount. *Id.* at 996. There was no broad language in the clause, such as "any claim,"

26   "arising out of," or "relating to." *See id.* Thus, although the question of whether the uninsured son

27   was covered by his father's policy was indeed a related question, the court held the matter was not

28                                                          10

subject to the arbitration clause. *Id.* at 996-97. The parties' dispute was not about fault or the amount of damages. *Id.* at 996.

Courts must acknowledge the use of specific and exact terms, *PBS Coal, Inc. v. Hardhat Mining, Inc.*, 632 A.2d 903, 906 (Pa. Super. Ct. 1993), and where an arbitration provisions clearly excludes a particular matter from its scope, *Cummings*, 404 F.3d at 1262; *Henning*, 795 A.2d 996-97 ("parties should not be required to arbitrate those issues that fall outside the scope of the agreement"). Here, section 9.3 of the Agreement and section 5 of Addendum 7 impose specific limitations on the scope of arbitration. Of course, Plaintiff's claim first claim for breach of the implied covenant of good faith and fair dealing and the fourth claim for breach of the Contractor Agreement should be submitted to arbitration. The subject of these claims center on Plaintiff's disagreement with Defendant FedEx's acts to terminate the Contractor Agreement.

On the other hand, Plaintiff's claim for tortious interference with contractual relations and civil conspiracy should not be subject to arbitration. Those claims may "arise out of" or be "related to" Plaintiff's disagreement with Defendant FedEx's termination, but section 9.3 of the Agreement is not that broad. *See AT & T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (applying a strong presumption in favor of arbitration where the clause has broad language). Those claims go beyond a determination of whether Defendant FedEx terminated the Agreement within its terms. *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (listing the elements of intentional interference with contractual relations); *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. Ct. 2006) (listing the elements of civil conspiracy); *Triffin v. Janssen*, 626 A.2d 571, 574 (Pa. Super. Ct. 1993) (listing the elements of tortious interference with contractual relations).

///

///

///

///

///

///

11

1

(2) Valid Agreement to Arbitrate

2      Plaintiff claims that section 9.3 of the Contractor Agreement is unenforceable because it is

3   unconscionable and contrary to public policy.[4]  (Doc. #2, Exh. A; Doc. #13.)  State law applies in

4   determining the validity or enforceability of an arbitration clause.  *Doctor's Assoc., Inc. v. Casarotto*, 517

5   U.S. 681, 686-87 (1996); *Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 281 (1995).  Here, Plaintiff

6   presents its arguments under Nevada law (Doc. #2, Exh. A; Doc. #13), without regard to the

7   Agreement's choice of law clause.  The court finds, however, that the validity of the parties' agreement

8   to arbitrate should be analyzed under Pennsylvania law.  *Houlihan v. Offerman & Co.*, 31 F.3d 692, 696

9   n.3 (8th Cir. 1994).  The law of Pennsylvania is designated as the choice of law in the Contractor

10   Agreement (Doc. #12, Exh. A (section 16)).  *Provencher v. Dell, Inc.*, 409 F. Supp. 2d 1196, 1201 (C.D.

11   Cal. 2006) (following the contractual choice of law clause in determining the enforceability of an

12   arbitration clause).  This provision is valid under Nevada law.  *Bassidji v. Goe*, 413 F.3d 928, 933 (9th

13   Cir. 2005).  No public policy concerns are raised by this contract/tort action, and Pennsylvania law is

14   substantially related to this suit in that Defendant FedEx has its headquarters in Pittsburgh, *see, e.g.*,

15   *Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995).

16

17      [4]Defendant FedEx argues that Plaintiff claims the entire Contractor Agreement, not just its arbitration
clause, is unconscionable.  (Doc. #14.)  Defendant FedEx claims the court must send that issue to arbitration

18   under *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).  The court notes, however, that

19   Plaintiff's Complaint and Opposition allege that the Contractor Agreement and its arbitration clause are
unconscionable as if the two were one in the same.  For example, Plaintiff's Opposition brief will have one

20   subheading that specifically challenges the validity of the arbitration clause (*e.g.*, Doc. #13 at p. 8 ("The Remedial

21   Arbitration Provisions of the FEDEX HOME Contractor contract are Unconscionable and Against the Public
Policy of Nevada"), while the following argument subheading challenges the entire Contractor Agreement (*e.g.*,

22   *id.* at p. 10 ("The FEDEX HOME Contractor Agreement is Procedurally Unconscionable").

23      In any event, upon reading the Plaintiff's submissions, the court finds that Plaintiff does not only argue

24   that the Contractor Agreement is unconscionable.  If that were the case, the court may very well compel
arbitration given *Prima Paint* and the well known federal policy that favors arbitration.  However, Plaintiff does

25   in fact argue that arbitration clause, section 9.3 of the Contractor Agreement, is unconscionable by itself.  That

26   being the case, the court will consider it as a grounds for invalidation.  *See Circuit City Stores, Inc. v. Adams*, 279

27   F.3d 889, 892 (9th Cir. 2002).

28                                                          12

1    Under Pennsylvania law, "[a] determination of unconscionability requires a two-fold

2  determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there

3  is no meaningful choice on the part of the other party regarding the acceptance of the provisions."

4  *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1274 (Pa. Super. Ct. 2004) (citing *Lytle v. CitiFinancial*

5  *Serv., Inc.*, 810 A.2d 643, 658-59 (Pa. Super. Ct. 2002)).  Moreover, "[i]t must be noted that simply

6  because a dispute involves an adhesion contract, that contract is not automatically unconscionable.

7  However, the determination that an adhesion contract is at issue, by definition fulfills the second prong

8  of the unconscionability test." *Id.* (citing *Lytle*, 810 A.2d at 658).

9    Here, there is little doubt that the Contractor Agreement is a contract of adhesion.  It is a "form

10  contract prepared by one party, to be signed by the other party in a weaker position . . . , who has little

11  choice about the terms." *McNulty*, 843 A.2d at 1273.  Defendant's arguments to the contrary, which

12  point out that Plaintiff never attempted to negotiate its terms, are without merit. (Doc. #14.)  It makes

13  no difference that Plaintiff may have had the right and notice to seek financial or legal consultation.

14  The Contractor Agreement was a non negotiable form contract.  The second prong is met.

15    As to the first prong, Plaintiff alleges the arbitration clause is unreasonably favorable to

16  Defendant FedEx because it is one-sided and lacks mutuality. (Doc. #13.)  Plaintiff claims that only

17  independent contractors are required to arbitrate their claims under section 9.3, whereas Defendant

18  FedEx is free to litigate in court.  (*Id.*)  This position oversimplifies the Agreement and treats section

19  9.3 as if it were in a vacuum.  Under section 9.1(e), contractors are entitled to terminate the Agreement

20  with thirty days notice. (Doc. #12, Exh. A.)  However, in the event of an "unauthorized termination"

21  where such notice has not been given, Defendant FedEx is specifically limited to the recovery of $500

22  in liquidated damages as compensation for the cost of finding substitute a deliveryman. (Doc. #12,

23  Exh. A (section 9.1(e)).)  This provision balances the scales between the parties.

24    Plaintiff's objections based on section 9.1(e)'s thirty day notice requirement and the availability

25  of provisional remedies under section 4 of Addendum 7 do not change the court's finding. (Doc. #13.)

26  Those non-mutual provisions are entirely reasonable in light of Defendant FedEx's line of business.

27  Thirty days of notice must be given by terminating contractors so that substitute deliverymen can be

28                                                             13

found and employed to take over the uncovered routes.   (Doc. #12, Exh. A (section 9.1(e)).)

Provisional remedies such as injunctions are also reasonably available to Defendant FedEx since their

customers' property may need to be secured.  (*Id.* (addendum 7, section 4).)

        Plaintiff's final set of arguments concerning the limitations on the arbitration proceedings also

lack merit.  Section 5 of Addendum 7 to the Contractor Agreement provides:

> If the arbitrator concludes the [Defendant FedEx's] termination was not within the terms of this Agreement, then, at the option of [Defendant FedEx]: (1) the Contract shall be reinstated . . . , [and] entitled to damages equal to the arbitrator's determination of what Contractor's net earnings . . . would have been during the period between the date of termination and the date of reinstatement; or (2) Contractor shall nevertheless be terminated, and, in that event, shall be entitled to damages equal to the arbitrator's determination of what Contractor's net earnings . . . would have been during the period between the date of termination and the last day of the term of this Agreement (without any renewals).  Contractor shall have no claim for damages in any other amount, and the arbitrator shall have no power to award punitive or any other damages.

(Doc. #12, Exh. A.)  Section 3 also provides that "neither party shall be entitled to written or

deposition discovery from the other, except with respect to damages."  (*Id.*)

        The elimination of punitive damages is not unconscionable given the scope of the arbitration

provision and the claims that are subject thereto.  Punitive damages are not an available remedy at law

for breach of contract.  *Standard Pipeline Coating Co. v. Solomon &Teslovich, Inc.*, 496 A.2d 840, 844

(Pa. Super. Ct. 1985).  If arbitrator finds in favor of Plaintiff, damages would be measured in terms of

the contractor's net earnings from the date of the termination.  There is nothing unreasonably favorable

to Defendant FedEx in that.  *See Hart v. Arnold*, 884 A.2d 316, 338 (Pa. Super. Ct. 2005) (stating that

breach of contract damages are measured so that the claimant is "placed as nearly as possible in the

same position he would have occupied had there been no breach").  This is especially true in light of

the fact that Plaintiff's claims for tortious interference and civil conspiracy are not within the scope of

the arbitration provisions.  *See supra*, part B.1; *see Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465, 1485

(9th Cir. 1997) (stating that "an interpretation that makes the contract lawful is preferred to one that

renders it unlawful").

14

The Addendum 7, section 3 limitation on discovery is also not unconscionable.  Granted, this limitation will affect Plaintiff's ability to present a case to the arbitrator, but it puts Defendant FedEx in the exact same position.  *Speetjens v. Larson*, 401 F. Supp. 2d 600, 608 (S.D. Miss. 2005).  It does not unreasonably favor one party over the other.  In fact, "[l]imited discovery rights are the hallmark of arbitration . . . . Discovery is *not* a right in arbitration as it is in judicial proceedings." *Id.* (quoting *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689-90 (2000)); *accord Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (stating that discovery limitations are a typical tradeoff for the benefits of arbitration).

Plaintiff's last argument is that section 5 of Addendum 7 imposes "excessive arbitration fees." (Doc. #13.)  According to Plaintiff, any clause that provides for any portion of the arbitration costs to be borne by Plaintiff would be unconscionable.  (*Id.*)  Plaintiff relies on *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465 (9th Cir. 1997), *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002), and *Armendariz v. Found. Health Psychcare Serv., Inc.*, 6 P.3d 669 (Cal. 2000).  Those cases, however, are not controlling for several reasons.

First, each of those cases were focused on statutory claims supported by strong public policies. *See Cole*, 105 F.3d at 1467 (asserting racial discrimination in the employment context based on Title VII); *Circuit City*, 279 F.3d at 892 (asserting sexual harassment based on California's Fair Employment and Housing Act); *Armendariz*, 6 P.3d at 674, 680-81 (asserting sexual harassment based on California's Fair Employment and Housing Act).  In *Cole*, for example, the arbitration was not only mandated as a condition of employment, but it also occurred at the option of the employer. *Cole*, 105 F.3d at 1469, 1484-85.  The Ninth Circuit held that, under those circumstances, allocating any portion of the arbitrator's fees on an employee who claimed a violation of Title VII would run contrary to Congress' intent. *Id.* at 1484; *see also Circuit City*, 279 F.3d 894-95 (relying on *Cole* and *Armendariz*); *Armendariz*, 6 P.3d at 687 (relying on and following *Cole*).  This case does not involve a statutory civil rights claim.  There is no similar fundamental public policy at risk.

Moreover, there is no evidence of what the arbitrator's fees would be, and no allegations or evidence showing that Plaintiff could not pay those fees. *Green Tree Finan. Corp. v. Randolph*, 531 U.S.

15

79, 91-92 & n.6 (2000); *see, e.g., Cole*, 105 F.3d at 1484 (considering whether the plaintiff could afford fees ranging from $500 to $1,000 per day); *Lytle*, 810 A.2d at 667-68 (considering that the plaintiff would spend over $2,000 in a $1,500 contract dispute). In fact, section 5 of Addendum 7 only provides that the arbitrator will determine "the division of the AAA fees and AAA assessed expenses . . . ." (Doc. #12, Exh. A.) It is not even certain whether Plaintiff will have to pay any costs if he prevails. Given these circumstances, the court cannot conclude there are prohibitive costs in the arbitration clause that render it unconscionable.

Plaintiff has failed to show that enforcement of the arbitration clause as to his first and fourth claims for relief would be unconscionable. *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 483-84 (1989). As such, Defendant FedEx's Motion to Compel Arbitration should be granted as to those claims. Judicial proceedings should be stayed on Plaintiff's second claim for tortious interference with business relations and third claim for civil conspiracy. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987). The arbitrator's findings and conclusions may prove to be informative on the nonarbitrable issues, and a stay may avoid an unnecessary duplication of effort. *See United States ex rel. Benefit of Newton v. Neumann Caribbean Int'l*, 750 F.2d 1422, 1426-47 (9th Cir. 1985).

///

///

///

///

///

///

///

///

///

///

///

16

CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand is **<u>DENIED</u>**. (Doc. #9).

**IT IS FURTHER ORDERED** that Defendant FedEx's Motion to Compel Arbitration and Stay Action is **<u>GRANTED IN PART</u>** and **<u>DENIED IN PART</u>**. (Doc. #12.) The parties shall submit Plaintiff's first and fourth causes of action to arbitration in accordance with section 9.3 of the Contractor Agreement. The nonarbitrable issues, including Plaintiff's second and third causes of action, shall be **<u>STAYED</u>** pending receipt by the court of the results of the arbitration.

**IT IS FURTHER ORDERED** that a telephonic conference is scheduled for **Thursday, January 18, 2007, at 9:00 a.m.** for the parties to advise the court on the progress of the arbitration proceedings. The parties shall, at least two (2) days prior to said hearing, advise the Deputy Clerk of the court (Gina Mugnaini (775) 686-5758) of the telephone number at which they may be reached for the telephonic conference.

DATED: July 6, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

17